IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER JOANNE GARRETT,                    6:15-CV-00949-BR

            Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

            Defendant.

KATHRYN TASSINARI
DREW L. JOHNSON
Drew L. Johnson, P.C.
Eugene, OR 97401
(541) 434-6466

            Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-2112

      Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Jennifer Joanne Garrett seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for Supplemental Security Income under Title XVI of the Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


<u>**ADMINISTRATIVE HISTORY**</u>

      Plaintiff protectively filed her applications on August 16, 2011, and alleged a disability onset date of September 2, 2006.  Tr. 205-12.[1]  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a

---

    [1] Citations to the official transcript of record filed by the Commissioner on October 20, 2015, are referred to as "Tr."

hearing on October 1, 2013.  Tr. 26-63.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on October 18, 2013, in which he found Plaintiff is not disabled.  Tr. 7-25.  That decision became the final decision of the Commissioner on April 6, 2015, when the Appeals Council denied Plaintiff's request for review.  Tr 1-4. *See Sims v. Apfel,* 530 U.S. 103, 106-07 (2000).

On June 1, 2015, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on November 7, 1977, and was 35 years old at the time of the hearing before the ALJ.  She completed high school and was in special education throughout high school.  She has past relevant work experience as a grocery bagger, a grocery clerk, and an assistant manager.  Tr. 57.

Plaintiff alleges disability due to "mental illness, thyroid, blood disorder, fibromyalgia, anxiety disorder, panic disorder, ADHD, PTSD, blood disorder, iron deficiency, thyroid, depression, wrist and hand injury, headaches, [and] chronic fatigue."  Tr. 238.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Keyser*, 648

5 - OPINION AND ORDER

F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e) 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity (SGA) since her September 2, 2006, alleged onset date. Tr. 12. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.

At Step Two the ALJ found Plaintiff had severe impairments of fibromyalgia, obesity, back impairments, bilateral shoulder impairments, hypothyroidism, depression, anxiety, panic disorder

with agoraphobia, post-traumatic stress disorder (PTSD), bipolar
disorder, somatization disorder, sleep disorder/insomnia, alcohol
abuse, and anxiolytic abuse.  Tr. 12.

    At Step Three the ALJ found Plaintiff's impairments do not
meet or equal any listed impairment.  Tr. 13.  The ALJ found
Plaintiff has the RFC for a limited range of light work and can
lift and carry 10 pounds frequently and twenty pounds
occasionally.  She can frequently climb ramps and stairs;
frequently stoop, kneel, crouch, and crawl, but may never climb
ladders, ropes or scaffolds; may occasionally reach and work
overhead with the bilateral upper extremities; and must avoid
more than occasional exposure to extreme cold, vibration, and
hazards such as moving machinery and unsecured heights.  The
claimant is capable of learning, remembering, and performing
simple, routine, and repetitive work tasks involving simple work
instructions that are performed in a routine, predictable, and
low-stress work environment (defined as one in which there is a
regular production pace, few workplace changes, and no "over the
shoulder" supervision) and may have occasional contact with
supervisors and coworkers and minimal contact with the public.
Tr. 14-15.

    At Step Four the ALJ found even though Plaintiff is
incapable of performing past relevant work, Plaintiff retains the
ability to perform other jobs that exist in the national economy.

Accordingly, the ALJ found Plaintiff is not disabled.    Tr. 18.

## DISCUSSION

Plaintiff contends the Commissioner erred by (1) finding Plaintiff less than fully credible, (2) failing to properly weigh medical evidence, (3) failing to develop the record, and (4) improperly weighing lay-witness testimony.

### I.  Credibility of Plaintiff's Testimony

Plaintiff contends the ALJ erred when he found Plaintiff's testimony was not fully credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008).  The ALJ's findings, however, must be supported by specific, cogent reasons.  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).  *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001).  Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing."  *Id.*  The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints.  *Id.*  The evidence on which the ALJ relies must be substantial.  *Id.* at 724.  *See also Holohan,* 246 F.3d at 1208.

General findings (*e.g.*, "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

When deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an under-lying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant:(l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282. *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

## A.  Plaintiff's Function Report and Pain Questionnaire

Plaintiff completed an Adult Function Report on
September 15, 2011.  Tr. 259-66.  Plaintiff reported she was
"constantly tired, in pain, [and] depressed."  Tr. 259.  On some
days she does not get out of bed.  She stated she has a severe
learning disability that makes it hard to complete tasks, and she
has trouble concentrating.  Plaintiff also reported she injured
her hands and wrists at the gym, her legs and feet swell making
it hard to stand, and she has anxiety and panic attacks that make
her vomit.

Plaintiff stated she gets up when she feels rested and does
laundry and household chores depending on her pain and energy
levels.  Tr. 260.  She watches television and sleeps until panic
attacks wake her.  Plaintiff's asthma makes it hard to breathe at
night.  Some days she does not get dressed and her appetite is
poor.  Her mother calls her daily to remind her to care for her
personal needs.

Plaintiff stated she prepares protein drinks, sandwiches,
and raw vegetables for food.  Tr. 261.  She cleans the kitchen,
vacuums, and does laundry, and it takes all day to complete her
chores.  Tr. 262.  She gets overwhelmed and takes breaks, and
sometimes her mother will come to help her.  Plaintiff does not
drive due to fear of panic attacks, and she does not have a
driver's license because the written test would be difficult for

11 - OPINION AND ORDER

her due to her reading comprehension issues.  She shops for food two or three times a month for an hour or two each trip.

Plaintiff reported she is no longer able to work out at the gym very often, and she does not go out except for appointments. Tr. 263.  She is able to lift 15 to 20 pounds depending on how her back feels, and she can walk three to four blocks before requiring rest.  Her ability to walk is affected by the weather, her asthma, and her allergies.  Plaintiff is unable to pay attention for very long, and she has trouble following written instructions.  Tr. 264.  Stress causes her to "panic, freak out, cry, sleep a lot, get angry, [and] yell."  Tr. 265.  She does not like changes in her routine.  Plaintiff is afraid of fire, driving, dying, germs, and people.  Tr. 265.  She takes Effexor, which causes dizziness and panic; Xanax, which causes a racing heart beat; ferrate, which causes diarrhea; and Benadryl, which causes hives.

Due to pain from fibromyalgia, Plaintiff reported she has trouble lifting, squatting, bending, reaching, walking, sitting, kneeling, stair climbing, and using her hands.  Tr. 266.

**B.  Plaintiff's Testimony at the Hearing**

Plaintiff testified at the October 1, 2013, hearing before the ALJ.  Tr. 26-63.  She was incarcerated at the time and had been for the past eight months after conviction for attempting to use a child in an inappropriate display (texting nude photos to

him) and for having a sexual relationship with a minor aged 16. Tr. 32-33. The minor was her best friend's son. Plaintiff expected to be released in August 2014.

She graduated from high school and was in special education classes for 12 years. Tr. 33. She last worked at Albertsons as assistant manager of customer service. She left after seven years because "the bosses that I had were not kind to me. They were always giving me grief about getting sick all the time. I had a low immune system . . . . It got to the point where with my mental stuff that was going on, I couldn't handle it anymore." Tr. 34-35. She quit in September 2006. She became a foster parent to three children shortly before leaving her job. She briefly worked as a server in a restaurant and worked for four days at Fred Meyer, but she had "a massive panic attack and quit my job." Tr. 35. Plaintiff stated her managers picked on her and made fun of her in front of customers. She stated Albertsons managers threatened to fire her for small errors, they harassed her for having doctors' appointments, and they forced her to work when she was sick. Tr. 35-36.

During the four days that Plaintiff worked at Fred Meyer, she worked in the deli and had three days training. Even though her managers knew she had a learning disability, they did not have any patience with her, "and it got to the point where I just, I couldn't do it. I panicked to the point where I almost

passed out.  My anxiety just was through the roof."  Tr. 36.
Plaintiff described herself as "overly emotional" and high-
strung.  Tr. 37.  Panic attacks cause her to "get frustrated and
I don't, I shut down.  I don't cope."  Tr. 37.  She startles
easily and cannot calm down.  Her heart rate rises, she
hyperventilates, and she sometimes faints.  In September 2006 she
had panic attacks weekly.

Plaintiff was diagnosed with bipolar disorder two years
before the hearing.  Tr. 39.  She testified she suffers from
depression, and she isolated herself and lost friends about nine
months before her arrest.  She has had fibromyalgia since age 14.
She has severe pain throughout her body, her legs swell and ache,
and she cannot wear shoes or socks.  Tr. 39-40.  She suffers from
fatigue, insomnia, bulging discs, and scoliosis.  She also has a
problem with her shoulder and rotator cuff.  There are days when
she cannot get out of bed, and the bad days outnumber the good
days.  The correctional institution requires her to work, and she
recently requested to be put on light-duty work.  Tr. 40.
Plaintiff believes her physical and emotional issues render her
unable to work full-time.

Plaintiff testified:

> I can't stand for any part of like a long time.
> I can't walk for a long distance.  I basically
> can lay down for a little bit and then my body
> starts to hurt, so I have to get up to move,

move around, sit.  It's like a cycle.  It's
throughout the day.

Tr. 41.

Before she was incarcerated Plaintiff required an entire
week to do the household chores.  Tr. 42.  In December 2012 she
admitted herself to a hospital psychiatric unit and stayed for 18
days with suicidal ideation.  Tr. 43.  The doctors wanted her to
stay longer, but she had to pack up her apartment because she was
about to become homeless.  Plaintiff isolated herself for six
years prior to her arrest and stayed in her room with her
emotional-support dog.

Plaintiff testified she has trouble focusing on written
materials, and her comprehension is poor.  Tr. 44-45.  She has
trouble communicating and is told she is confusing.  Her
concentration is also poor.  PTSD causes her to be unable to
tolerate confrontation, and she startles easily.  She thinks she
became unable to work when she quit the job at Fred Meyer.

Plaintiff testified the correctional institution had her on
work detail as a unit orderly.  She mopped; swept; wiped down
tables; and cleaned the bathrooms, showers, and sinks.
Tr. 49.  Plaintiff stated:

> Basically I am a really good worker in the past,
> and I have a good work ethic.  And I get up and
> do my job, as best as I can, and usually I am
> stuck doing everyone else's job.  And it's to
> the point now, I can't handle it anymore.  I
> [have] done this for six months, and I have
> struggled through this.

15 - OPINION AND ORDER

*Id.*

Plaintiff testified she did not know if she would be able to take care of herself if she were home.  Plaintiff denied alcohol and anxyalytic abuse.  There was one incident involving alcohol and Xanax before her December 2012 hospitalization, and the diagnoses apparently were the result of that incident.

Even though chart notes dated May 2010 erroneously indicate she was going to the gym five times a week, she stated she was only going to the gym about three days a week.  Tr. 52.

### C. The ALJ's Finding Regarding the Credibility of Plaintiff's Testimony

The ALJ found Plaintiff's testimony was not entirely credible.  Tr. 17.

When assessing credibility the ALJ is allowed to consider the consistency of a claimant's statements.  SSR 96-7p, at *5.  *See also Thomas,* 278 F.3d at 958.  The ALJ noted Plaintiff's statements were inconsistent as to why she stopped working.  Specifically, Plaintiff testified she quit working because of panic attacks, depression, and severe general pain that rendered her unable to get out of bed some days.  Tr. 34-35.  In August 2010, however, Plaintiff told her counselor that she quit when she adopted three children, and in February 2011 she told a medical provider that she could not work because she had to be there for her children.  Tr. 17, 562, 639.

The ALJ also noted Plaintiff reported she was diagnosed with

16 - OPINION AND ORDER

Attention Deficit Hyperactivity Disorder (ADHD).  Tr. 17, 946.
There is not, however, any diagnosis of ADHD in the record.
Tr. 946.  Plaintiff also testified she was diagnosed with
fibromyalgia at age 14, but this is not supported by the medical
evidence.  Tr. 17, 39-40.

The ALJ concluded Plaintiff's alleged limitations were
inconsistent with her activities.  Tr. 17-18.  The ALJ noted
Plaintiff was independent in personal care and grooming; could
prepare simple meals; did household chores including cleaning the
kitchen, laundry, and vacuuming; used public transportation;
grocery shopped; and went to medical appointments.  Tr. 17,
259-63.  The ALJ also pointed out that Plaintiff was looking for
work in November 2009, which was three years after her alleged
onset date (Tr. 17, 370); in May 2010 Plaintiff was going to the
gym five days a week (Tr. 17, 650); in February 2011 Plaintiff
was injured playing volleyball (Tr. 17, 345, 639); in July 2012
Plaintiff was babysitting; and in August 2012 Plaintiff was
exercising on an elliptical machine and stair-stepper.
Tr. 17-18, 724, 721.  Plaintiff also testified she had been on a
work detail for six months that involved mopping floors, cleaning
tables, sweeping, cleaning bathrooms, and folding towels.
Tr. 18, 49.

The ALJ may rely on a claimant's daily activities to form
the basis of an adverse credibility determination.  *Orn v.*

*Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).  Here the ALJ identified daily activities that contradict Plaintiff's testimony about her limitations.

On this record the Court concludes the ALJ did not err when he found Plaintiff's testimony less than fully credible because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  The Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If a conflict does not arise between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester*, 81 F.3d at 830.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and to observe the patient as an individual.  *Orn,* 495 F.3d at 632.  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining physician).  Even if one physician is contradicted by another physician, the ALJ may not reject the

18 - OPINION AND ORDER

opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Scott Alvord, Psy. D., conducted a consultative psychological evaluation of Plaintiff in April 2012. Tr. 618-24. Dr. Alvord conducted a mental-status examination and clinical interview, but he did not have any medical records to review and he did not administer any tests. Tr. 618. Dr. Alvord diagnosed Plaintiff with PTSD; major depressive disorder, recurrent (moderate); and Rule Out learning disorder (not otherwise specified). He opined Plaintiff's adaptive functioning from a psychiatric perspective fell in the moderate range of impairment. Tr. 623.

The ALJ noted Dr. Alvord's report and gave it significant weight. Tr. 16. The ALJ, however, noted Dr. Alvord "does not provide specific comment on how the claimant's impairments would affect her ability to function in a work setting." Tr. 16.

Plaintiff contends the ALJ erred in his consideration of

19 - OPINION AND ORDER

Dr. Alvord's opinion by failing to note that Dr. Alvord found a learning disability "should be ruled out."  Tr. 623.  The record, however, reflects the ALJ specifically noted that rule-out diagnosis.  Tr. 16.

Plaintiff also contends the ALJ should have fully credited Dr. Alvord's opinion.  The ALJ, however, included limitations noted by Dr. Alvord when the ALJ evaluated Plaintiff's RFC; for example, the ALJ included Plaintiff's moderate range of impairment and limitations to "simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment, defined as one in which there is a regular production pace [with] few work pace challenges."  Tr. 14.

On this record the Court concludes the ALJ did err when he gave only "significant" weight to Dr. Alvord's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record.

**III.  The ALJ's Duty to Develop the Evidence**

Plaintiff contends the ALJ erred by failing to order psychological testing for Plaintiff for the purpose of ruling out a learning disorder and by failing to order intellectual and cognitive testing.  Plaintiff argues IQ testing can be a deciding

factor when determining intellectual disability and establishment
of a learning disability would likely have altered the ALJ's
evaluation of Plaintiff's RFC.  Plaintiff does not specify the
functional limitations arising from a documented learning
disability that were not accommodated by her RFC nor does she
cite any authority that indicates a "rule-out" diagnosis triggers
the ALJ's duty to develop the record.

    "An ALJ's duty to develop the record further is triggered
only when there is ambiguous evidence or when the record is
inadequate to allow for proper evaluation of the evidence."
*Mayes,* 276 F.3d at 459-60.   On this record the evidence is not
ambiguous and is adequate for proper evaluation.  Thus, the Court
concludes the ALJ did not err when he did not order another
psychological evaluation or IQ testing for Plaintiff.

## IV.  The Lay-Witness Testimony

    The ALJ has a duty to consider lay-witness testimony.  20
C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d).
*See also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).
Friends and family members in a position to observe the
claimant's symptoms and daily activities are competent to testify
regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d
915, 918-19 (9th Cir. 1993).  The ALJ may not reject such

testimony without comment and must give reasons germane to the witness for rejecting her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Inconsistency with the medical evidence, however, may constitute a germane reason.  *Lewis*, 236 F.3d at 512.  The ALJ may also reject lay testimony predicated on the testimony of a claimant properly found to be not credible. *Valentine*, 574 F.3d at 694.

Plaintiff's daughter, Cynthia Jones, completed a Third Party Adult Function Report in which she reported her mother does not sleep well, is often fatigued, does not get dressed or bathe daily, takes a long time to do chores like laundry, and often does not complete a chore.  Tr. 268-69.  Jones reported she helps her mother with light house work and also calls daily to remind her mother to take her medications.  Tr. 267-69.  Jones estimated her mother can walk three or four blocks depending on her allergies.  She stated Plaintiff cannot handle stress or stay on a routine.  Tr. 273.

The ALJ noted Jones's report, but he found the limitations she indicated were inconsistent with the medical evidence in the record.  Tr. 16-17.

On this record the Court concludes the ALJ did not err when he rejected Jones's lay-witness opinion because the ALJ provided

legally sufficient reasons for doing so.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 14th day of June, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge